Summ/144

REC#: SEA100137



FILED (DROP BOX)

DEC 2 7 2021

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

## U.S. FEDERAL DISTRICT COURT WESTERN DISTRICT OF WASHINGTON

### SEATTLE DIVISION

# 21-CV-1722 BAT

| | |
|---|---|
| STEPHEN ANDERSON, | Case No.: Number |
| Plaintiff, | |
| vs. | CIVIL RIGHTS COMPLAINT - 42 USC § 1983 - PAGE§ 1983; 4TH & 14TH AMENDMENTS TO U.S. CONSTITUTION; UNREASONABLE SEARCH & SEIZURE; WORK EXEMPT FROM PERMIT; KMC 21.06.215; BCC 23.05.090; DEPRIVATION OF DUE PROCESS; KMC 21.06.570; BCC 20.35.085; SEPARATION OF POWERS DOCTRINE; INJUNCTION |
| CITY OF KIRKLAND & CITY OF BELLEVUE, | |
| Defendant | |
| | JURY TRIAL DEMANDED |

i.

## JURISDICTION AND VENUE

1.       This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based

upon the continuing violations of Plaintiff's rights under the Fourth and Fourteenth

Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. §

1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law that

Civil Rights Complaint - 42 USC § 1983 - Page    1

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

restricts unreasonable searches and deprivation of due process. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Supplemental jurisdiction over Plaintiff's state law claims is pursuant to 28 U.S.C. §1367.

2.      Venue is proper in the Seattle Division of the Western District of Washington in that the events and conduct complained of herein all occurred in the Seattle Division of the Western District of Washington.

### ii.

### PRELIMINARY STATEMENT

3.      To incentivize solar and cut costs, the State of Washington passed a law requiring government entities to reduce building code requirements. It also offered a grant to research how this could be done. The cities of Bellevue, Kirkland, Edmonds, & Ellensburg formed a team and applied for the grant. The grant was awarded and the team determined solar projects could be reasonably exempt from certain building permit requirements and solar electrical permits could be fast tracked. *(Attachment 1-23, Paragraph 1)* A standard form was prepared for use by local governments where applicants could determine their exemption by checking applicable boxes. *(Attachments 11-1 & 11-2)*

4.      Two of the cities passed laws exempting solar applications from building permits. *(Attachment 1-23, Paragraph 1)* Kirkland Municipal Code 21.06.215 & Bellevue City Code 23.05.090 exempt photovoltaic panels (hereinafter solar panels, photovoltaic panels, modules, PV Panels, or just panels) from building permits when certain conditions are met, but require an electrical permit for the electrical portion of the solar project. *(Attachment 1-11 & 1-12)* Those conditions are a low bar and typically met in most projects. By checking the correct

Civil Rights Complaint - 42 USC § 1983 - Page   2

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

boxes on the solar application, the conditions are automatically deemed to be met and thereafter such non-electrical aspects are not subject to inspection. At least, that is how the code(s) read and what was intended.

5.      Those laws were designed to harmonize with other solar laws that also create certain exemptions for aspects of solar projects. Those laws have changed slightly and moved from one section of code to another over time, but have remained essentially the same for years. Such codes are found in WAC 51-54A-1204 and WAC 296-46B-690 (2) & (4). *(Attachment 1-16, top right and top left)*

6.      The essence of those codes means that building permits for solar are required only in unusual circumstances, the panels themselves are not subject to inspection, and walkpaths for firefighters will be restricted to not more than 18" from the ridge to the first solar panels on a roof per WAC 51-54A-1204 and the Washington State version of the International Fire Code 605.11.

7.      Additionally, the codes respect the 3 phases of solar construction. The first phase involves erecting the flashings, standoffs, and structural support for the solar panels except that the rails might be included in phase 1 or phase 2 depending on the circumstances. This first phase is strictly non-electrical in nature and not subject to a permit or inspection per WAC 296-46B-690 (2). The code provides that a roofing company, homeowner, or solar installer can go up on the roof and install those materials without waiting for inspections or permits.

8.      The second phase of solar construction requires solar installers to wait for a solar electrical permit to be "obtained" prior to fastening the solar panels to the structural support per WAC 296-46B-690 (4). But, this also means that once the electrical permit is "obtained" or

Civil Rights Complaint - 42 USC § 1983 - Page   3

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

issued, the solar installers can start right away without waiting for an inspection of the panels or the rails because they are exempt under WAC 296-46B-690 (4) and the cities own codes exempting PV panels from permits per KMC 21.06.215 & BCC 23.05.090 . The language of both city codes is nearly identical.

9.       Thus, any "Pre-Con" inspection can only apply to electrical components that aren't the rails or panels themselves. Even if the panels or rails conduct electricity, the language of WAC 296-46B-690 (4) specifically precludes the "placement and securing of the device" from "electrical inspection." Thus, this would include the panels and rails. The panels are the device. The rails are a means of securing them.

10.      Manufacturers have carefully designed the main rooftop solar equipment to be plug and play. Solar panels, optimizers, and microinverters universally use MC4 connectors that simply snap together. They are manufactured this way so installation of solar panels, optimizers, and microinverters is a passive activity rather than one that requires an electrician to connect wires. The solar panels are classified universally as building permit type equipment rather than electrical type equipment. For instance, KMC 21.06.215 (1) says, "Building." (Attachment 1-13, 2nd paragraph) They are manufactured this way deliberately to avoid the need for electricians on the roof at that stage of construction, which reduces costs.

11.      Solar companies are not merely in competition with each other. The projects need to pencil out. They have found that as payback periods on projects increase, consumer interest decreases regardless of pricing of competitors. So, rather than going with the lowest bid, the prospective buyer might not agree to do solar at all. Thus, manufacturers have lobbied to keep permitting requirements minimal to keep costs down.

Civil Rights Complaint - 42 USC § 1983 - Page   4

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

12.     The third phase of solar construction involves electrical work. This is subject to an inspection per respective codes. It covers non-passive electrical activities including connection of electrical conductors, pathways of conductor through conduit, terminations, Junction boxes, line inverters that require landing of conductors to terminals, grounding and bonding, and those sorts of things. Phase 3 basically involves connecting the solar array(s) on the roof to the electric service panel on the ground.

13.     Inspectors play a critical and important role in safeguarding the safety of residences in phase 3 that cannot be denied. They are needed.

14.     However, the cities of Kirkland and Bellevue, despite exemptions in their own codes, do not treat photovoltaic panels as exempt even when all the conditions are met. The City of Kirkland requires "elevation views," which is a "building permit" type requirement and extremely burdensome. It is not "electrical" in nature.

15.     Both Kirkland and Bellevue demand solar panels remain at ground level until after a "pre-con" despite an electrical permit already having been obtained. *(Attachment 2-1, top middle red box)* During this inspection, their inspectors search the PV panels for listing marks and/or model numbers.

16.     The City of Bellevue looked for listing marks on rails during a "pre-con" inspection despite them not bearing a listing mark and being exempt from inspection at that stage of construction. Also, the City of Bellevue "Building Official" made a decision directing electrical inspectors to climb ladders and inspect flashings that are not electrical in nature and exempt from a search by code.

Civil Rights Complaint - 42 USC § 1983 - Page    5

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

17.     The City of Kirkland prints issued permits with requirements for roof pathways greater than 18" at the ridge, wants 36" pathways along the eaves of roofs, spacing in "valleys" and "hips," and enforces the wrong version of the International Fire Code. *(Attachment 2-1, middle red box center of page halfway down)*

18.     This results in unreasonable searches and trespasses of Plaintiff's work product at both Solx and AMC electric. These actions subject him to harassment and reduce his effectiveness and value as an employee. It affects his compensation, morale, and enjoyment of work.

19.     The demand for such inspections and documentation also results in unlawful seizures of materials and work product when it stops projects.

20.     Additionally, there have been instances where plans examiners during plan review and on-site electrical inspectors harassed, punished, and retaliated against plaintiff in a variety of situations described in the facts specific section of this complaint when Plaintiff objected to aspects of the phony "Pre-Con" requirement(s). The "Pre-Con" inspection is a naked excuse for the "Building Official(s)" to trigger another revenue stream for the department. It involves searching materials and work product that are either exempt from an inspection entirely, or would not be "covered" and could be viewed just as easily at a final inspection.

21.     Both cities have codes that guarantee appeals to independent 3rd party Hearing Examiners when invoked. However, building official(s) at both Kirkland and Bellevue intervened and blocked Plaintiff's appeals to the respective Hearing Examiners *(Attachment 3 relates to the Kirkland interference while Bellevue never responded in writing)*

22.     The Cities of Bellevue and Kirkland building officials have taken leadership positions among cities in King County and serve as a model for other cities to follow. They influence

Civil Rights Complaint - 42 USC § 1983 - Page    6

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

such other cities as Sammamish, Renton, Kent, Black Diamond, Enumclaw, Covington, Federal Way, and other cities that use the website mybuildingpermit.com. They spread a disease of dishonesty where they claim to champion solar on their websites and accept grant monies for studies, but then do the opposite of the very laws the city council enacts.

23.     It creates an administrative police state where construction officials make their own laws irrespective of the separation of powers doctrine. It is an attack on the very foundation of our democratic society.  It means that our votes at the polls are for nothing and voting is a charade since the laws the elected legislators passed aren't followed by code enforcement officials.

24.     It must be stopped.

### iii.

### PARTIES

**Plaintiff**

Stephen Anderson

25.     Plaintiff Stephen Anderson (hereinafter Anderson or Plaintiff) is a licensed Electrical Administrator (01) holding license number ANDERSM813D2. This is a license he bears in his personal capacity.

26.     In order for an electrical contracting company to operate in the State of Washington, it must employ an Electrical Administrator or a Master Electrician. Anderson is the designated Electrical Administrator for Solx Corp, which is a Sub-S Corporation incorporated under the laws of the State of Washington.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

27.     Electrical Administrators are responsible for insuring their assigned electrical contracting company and its employees meet all the many and various licensing requirements, permitting requirements, National Electric Code standards, and other code standards that apply to projects. For solar companies, they often prepare line diagrams, schematics, submit those for plan review, and interact with permitting departments and electrical inspectors. Anderson does all those things for Solx. He also is a solar installer and onsite for most solar work performed by Solx.

28.     Anderson also works for AMC Electric on occasion as both companies find it convenient to share each other's staff depending on circumstances and as situations arise. AMC has used Anderson in the permitting process for solar projects during the plan review stage and to be on site for inspections in a passive capacity. Anderson has also been a key solar installer for AMC electric.

29.     Anderson owns 100% of Solx stock, is its only officer, and has been with Solx since its inception. The Solx federal tax return reflects an incorporation date effective January 21, 2015. It is licensed as an Electrical Contractor under number SOLXCC*839B6 and a General Contractor under number SOLXCC*855OB. It is also licensed to do business in the Cities of Bellevue, Kirkland, and others.

30.     Solx has completed multiple solar installations in Bellevue and Kirkland. It has also done various other smaller electrical projects that were non-solar or only peripherally solar related in both cities.

Civil Rights Complaint - 42 USC § 1983 - Page    8

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

31.   In April of 2020, Anderson supervised Solx 3 full-time employees. At other times, Anderson supervised it's part time employees and subcontractors.

32.   Solx under Anderson's management has completed over 40 solar installations, all of which are located in King County.

33.   AMC Electric has been installing solar for well over a decade and does many other electric projects.

34.   Solx under Anderson's management reported 2018 gross receipts of $453,524.19 and ordinary business income of $78,883.10. for the year. It paid Stephen Anderson the ordinary income as cash disbursements plus an additional $19,120.00 in regular wages. Thus, Anderson earned $98,003.10 for the year from Solx Corp.

35.   Solx was worth 3x the single years earnings, or $294,009.30 at that time all of which was an asset of Anderson.

36.   Prior to starting Solx Corp, Stephen Anderson was able to sell Anderson Carpet Cleaning Inc, which he wholly owned, for a significant amount.

37.   Solx was started by Anderson with the idea that he would build it to earnings of $150,000.00 per year and sell for a sum of $450,000.00.

38.   Until April of 2021, Solx operated out of Anderson's home at 24129 SE 1st Ct, Sammamish, WA 98074.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

39.     Because of Anderson's disillusionment with the Cities of Bellevue and Kirkland actions and influence on surrounding cities Anderson served, Solx and Anderson moved to 218 Vista Del Mar St, Camano Island, WA 98282.

40.     Plaintiff Stephen Anderson is representing his interest in this civil action.

41.     Anderson cannot represent Solx. Solx is not currently a party to this lawsuit, but may be added soon and represented by construction attorney Daniel Frohlich, at which point the complaint will be amended.

42.     Anderson is not an attorney, but did attend law school for a year and passed the First Year Law Student's Bar exam administered by the State of California.

43.     He also had a successful suit via Federal District Court Seattle Division some years ago as a plaintiff.

44.     He moved to Camano Island to get away from Bellevue and Kirkland, but continues to get calls from prospects interested in Solar located there and work from AMC in those cities and cannot escape the continuing false acts of Defendants. Anderson is bidding right now on a solar project on Pleasure Point Lane in Bellevue.  Thus, he seeks an injunction to protect himself from further harassment by the cities of Bellevue and Kirkland. A decision in favor of Anderson will put the cities they influence on notice.

**DEFENDANTS:**

City of Kirkland

45.     Defendant City of Kirkland is a municipal entity with the capacity to sue and be sued. It is an Incorporated City under the laws of the State of Washington. The Building and Planning Department of the City of Kirkland is the subject of this action as it relates to Kirkland.

Civil Rights Complaint - 42 USC § 1983 - Page    10

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

Employees of the city have engaged in the acts complained of herein pursuant to the policies, practices and customs of the city (hereinafter referred to as The City of Kirkland, City of Kirkland, Kirkland, Department, The Department, or department).

46.     Employee Tom Jensen identifies himself as "The Building Official" or "Acting Building Official." *(Attachment 3, below signature)* This is a legal term referring to the head of the Department emanating from the Kirkland Municipal Code.

47.     Employee Lazlo Farkas is an electrical plans examiner that also performs electrical inspections. Four years ago, he worked at the City of Sammamish and interacted with Anderson and Solx there related to a solar electrical permit.

48.     Employee Angela Haupt is a Senior plans examiner with the department.

49.     At this time, Plaintiffs decline to serve them personally as sovereign immunity may make them immune from liability. However, in the event they are not immune, plaintiffs reserve the right to serve them later.

50.     At all times, by his own hand, through others, or these specific employees, the actions and decisions of "The Building Official," were effected, authorized, acquiesced to, set in motion, personally conducted by, or failed to take necessary steps to prevent the unlawful conduct described herein.

51.     Each of the Defendants, their employees and agents, participated personally in the unlawful conduct challenged herein, which acts resulted in the harm suffered by Plaintiffs. The challenged acts caused the violation of Plaintiff's rights.


**DEFENDANTS**

City of Bellevue

Civil Rights Complaint - 42 USC § 1983 - Page    11

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

58.     Defendant City of Bellevue ("CITY") is a municipal entity with the capacity to sue and be sued. It is an Incorporated City under the laws of the State of Washington. The Building and Planning Department of the City of Bellevue is the subject of this action as it relates to Bellevue. Employees of the CITY have engaged in the acts

complained of herein pursuant to the policies, practices and customs of the CITY (hereinafter referred to as Bellevue, City of Bellevue, Department, The Department, or department).

59.     Employee Greg Schrader was or is the "The Building Official." This is a legal term referring to the head of the Department emanating from the Bellevue City Code.

60.     Employee Doug Fox is or was  "Inspection Services Manager" in charge of conducting building and electrical inspections.

61.     Timothy Hingtgen is or was the Chief Electrical inspector for the department.

62.     Tim Dunnigan is or was an electrical inspector for the City of Bellevue.

63.     John Grotte is or was an electrical inspector for the City of Bellevue.

64.     At this time, Plaintiffs decline to serve them personally as sovereign immunity may make them immune from liability. However, in the event they are not immune, plaintiffs reserve the right to serve them later.

65.     At all times, by his own hand, through others, or these specific employees, the actions and decisions of "The Building Official," were effected, authorized, acquiesced to, set in motion, personally conducted by, or failed to take necessary steps to prevent the unlawful conduct described herein.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

66.     Each of the Defendants, their employees and agents, participated personally in the unlawful conduct challenged herein, which acts resulted in the harm suffered by Plaintiffs. The challenged acts caused the violation of Plaintiffs' rights.

**iv.**

**STATEMENT OF FACTS**

**Facts Specific to Kirkland - Kambiz Rahimi Solar Project**

67.     Solx submitted an electrical application to the City of Kirkland via "Mybuildingpermit.com" on 11/24/2018.  It was a solar project.

68.     The PV Panel portion of the project met prescriptive requirements of KMC 21.06.215 (work exempt from permit). In the application, Solx affirmed this by checking the relevant boxes for criterium pertaining to exemption from building permit requirements.

69.     Solx received a rejection notice on 11/26/2018.

70.     It stated "Electrical application not accepted. ID #62646…Please provide scale on elevation drawing sheet and show height of building." *(Attachment 4, top line)*

71.     Solx verbally objected to the request because the project was exempt from a building permit, but staff was insistent.

72.     Anderson met with staff at department offices, found they wanted various elevation views and a building height calculation called an "ABE."

73.     He obtained the original architectural drawings from the homeowner and used those to draft the required drawings. He also made a site visit to physically measure the building height.

74.     Solx prepared the requested documents and uploaded those on 12/13/2021 or 12/14/2018. *(Attachment 5, Pages 1-5)*

Civil Rights Complaint - 42 USC § 1983 - Page    13

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

75.     The request was not required by code, unduly burdensome, and caused significant delays.

76.     Solar installers do not typically construct buildings and are not generally equipped to draft building designs.

77.     This was the only correction for the application indicated by department staff.

78.     The other correction from Electrical Review that shows on MyBuildingPermit.Com for the application was a department error. *(Attachment 6, last paragraph)*

79.     Department staff Kelly Kinssies email of 12/12/2018 indicates the electrical review accepted the application "as is." *(Attachment 6, last paragraph)*

80.     The Planning division of the building department refused issuance of the permit until late Friday 12/21/2018. *(Attachment 7, First Page)*

81.     This meant construction couldn't begin until after Christmas.

82.     Thus, department actions delayed commencement of construction for over a month.

83.     The list of conditions states, "PRE-CONSTRUCTION – (FOR ALL PHOTO-VOLTAIC PROJECTS THIS IS A REQUIRED INSPECTION)…that shall be performed prior to the placement of any panels on the roof." *(Attachment 7, Page 3)*

84.     Solx customer Kambiz Rahimi expected the project to complete before the end of the year for a significant solar federal tax credit.

85.     A pre-con inspection occurred 12/27/2018. *(Attachment 7, Page 4)*

86.     Inspector McGivern did a search of the PV Panels which were stacked in the garage of the home.

87.     However, this was an unreasonable search, since the panels were exempt from search.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

88.    It was also a trespass ab initio (trespass from the beginning) because his search exceeded the scope of his license to search only electrical equipment and not exempt PV panels.

89.    It invaded Solx and Anderson's reasonable sense of privacy.

90.    The requirement that solar panels remain on the ground until after a pre-construction inspection is contrary to City of Kirkland's own building code.

91.    Solx passed the Pre-Construction inspection 12/27/2018. *(Attachment 7, Page 4)*

92.    Solx crew began the work and finished the same day.

93.    Anderson ordered a final inspection, which passed the following day, December 28th, 2018. *(Attachment 7, Pg 4)*


**Facts Specific to Kirkland – Canavor Project**

94.    AMC Electric (Hereinafter AMC) was under contract for a project at the Canavor residence.

95.    On July 23, 2021, AMC received an email from Kirkland Plans Examiner Lazlo Farkas.

96.    It stated, "ELECTRICAL Application Not Accepted ID#993483 Solar PV."

97.    Because AMC staff was having difficulty getting a solar electrical permit issued for the electrical portion of the solar project, AMC owner William Fidler contacted Anderson to assist.

98.    This was a new construction project involving a detached accessory structure and a swimming pool. Multiple contractors, subcontractors, and crews were involved in the project.

99.    AMC Electric was hired to install solar on the detached accessory structure, but not the general wiring.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

100.    The general contractor for the project had a separate licensed electrical contractor hired for general electrical wiring of the accessory building.

101.    KMC 21.06.215(1)(V)(i) Work Exempt from Permit specifically addresses solar on accessory structures.

102.    It lists, "PV system…designed and proposed for a…detached accessory structure" as exempt. *(Attachment 1 Page 11)*

103.    Thus, the PV panels for the solar project were exempt from permitting requirements.

104.    Anderson attempted to quickly resolve outstanding issues so AMC Electric could meet its contractual and fiduciary obligations to the homeowner.

105.    Anderson found electrical plans examiner Lazlo Farkas was insisting on a series of requirement that had no legal basis. AMC objected to certain Farkas standard false requests and Farkas retaliated with an additional list of unusual and irrelevant requests.

106.    Plans Examiner Farkas harassed Anderson for the following and spontaneously created his own laws :

107.    In stamped approved plans dated 9/7/2021, he communicated a requirement for 36" roof pathways on the side of the arrays, when only 18" along the ridge were required at most. (KMC 21.06.215(1)(V)(xiii) *(Attachment 2-1 & Attachment 1-14 respectively)*

108.    In the approved plans dated 9/7/2021, Farkas demanded no solar panels be installed until after a "pre-con" inspection despite PV panels not being subject to an inspection for that project. (KMC 21.06.215) *(Attachment 2-1)*

109.    In the approved plans dated 9/7/2021, Farkas improperly quoted a wrong version of International Fire Code 605.11 *(Attachment 2-1)* and imposed 18" pathways along the sides of

Civil Rights Complaint - 42 USC § 1983 - Page    16

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

valleys and hips instead of the Washington State version of the International Fire Code, which exempts PV panels from such requirements and imposes only 18" pathways along ridges. The correct version imposes no setbacks for valleys and hips.

110.    As a condition of issuing the solar electrical permit, on 8/26/2021 Farkas demanded a list of inspections and permits for work done by other licensed electrical contractors on the site that had no bearing on the AMC solar project. He wrote, "I will need a detailed list of all…Electrical Permits and load calculations for the structure you are installing the solar PV system on." *(Attachment 8-2)* He should have done his own research for electrical permits, all of which was publicly available information on mybuildingpermit.com. Anderson referred Lazlo to the other Electrical Contractor Ron Hubbard for permits and load calcs. *(Attachment 9, page 3, first line)* But, Farkas insisted on the information. Anderson researched and provided the information. *(Attachment 9, Page 1, #1)* Farkas sought to impose a modified feudal system where an administrative police state can unilaterally force labor requirements on electrical contractors for its own benefit. Anderson is not a licensed electrical inspector and could not be deputized involuntarily to search other contractors work.

111.    Farkas Arbitrarily and capriciously singled AMC Electric out for pictures of solar labels. These were not asked for during the initial application. Plans Examiner Farkas commented that he sometimes asked for documentation of solar labels when solar companies were new to him. *(Attachment 9, Page 2, Middle of Page & first page, #1)* But, he should keep a better list since Anderson had dealt with him when he worked for the City of Sammamish 4 years ago. In an email from that project, Anderson objected to his insistence on assessing the full value of the PV System installation despite erection of the PV panels themselves (60% of the project) being

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

exempt from permitting, the very thing that is the subject of this action. *(Attachment 10, Page 3, 2nd to last paragraph)*

112.    Farkas interrogated Anderson about the possibility of moving the project from the accessory building to the homeowner's main house.  Homeowner's main house was a vastly inferior position for solar than the proposed accessory structure. Site selection is not the concern of a plans examiner when the proposed structure is already an exceptional candidate for solar, if ever.

113.    Farkas demanded an additional set of AC disconnects on the exterior of the accessory building when NEC 690.12(C) only requires such disconnects be "outside" the building, which the plan already showed with them located on the main dwelling adjacent the existing meter base and the required placard directory of PV locations. Anderson objected in an email dated, 8/30/2021. But, Lazlo insisted and AMC eventually spent an additional 4 hours of forced work plus materials making that happen. *(Attachment 9, Page 1, #3)*

114.    The permit was finally issued September 7, 2021.


**Facts Specific to Kirkland – Reza Chitsaz Project**

115.    In the course of the Reza Chitsaz project (hereinafter Chitsaz), Department staff delayed the project by unreasonably demanding exempt "Elevation Views" on 5 separate occasions, falsely denied an appeal, insisted on a Pre-Con "before placement of modules on the roof," sought to enforce a false version of IFC 605.11, trespassed on Solx worksite, and performed an unreasonable search of exempt solar panels.

116.    It happened like this.

Civil Rights Complaint - 42 USC § 1983 - Page    18

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

117.   On October 25, 2021, Solx had a signed agreement from Chitsaz for a solar installation in hand.

Chitsaz had signed, but Solx had not signed.

118.   Solx chose to wait until after a meeting with City of Kirkland department staff before accepting, since the project was not feasible if 18" walkpaths on the roof were required.

119.   Anderson knew that based on events from the above Canavor project, the Kirkland Planning & Building department staff would likely insist on greater pathways even though the PV panels themselves were exempt from greater requirements.

120.   Anderson decided he should meet with department staff and verify his understanding of the setbacks was correct to mean that typically only 18" pathways along the ridge were required.

121.   Anderson met with "Acting Building Official" Tom Jensen at department offices.

122.   Anderson explained what had happened with Farkas requiring unusual roof pathways around roof mounted solar panels.

123.   At first Jensen stated the department had always required 36" pathways along eaves because firefighters carried weights of over 300 pounds and he needed to ensure their safety.

124.   Yet, together Anderson and Jensen looked through the code and determined the Washinton State Version of the International Fire Code only imposed 18" pathways on roofs for solar when certain criterium were met.

125.   This was important because Kirkland Municipal Code 21.06.215 Work Exempt from Permit references the International Fire Code 605.11.

126.   According to KMC 21.06.215, PV panels are exempt from a building permit if it meets that requirement and others.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

127.    Jensen staff printed out a copy of the Washington State Version of the IFC and handed it to Anderson.

128.    Solx then signed and entered into mutual agreement with Chitsaz.

129.    Solx submitted an electrical application for solar installation November 6, 2021. Anderson checked all the boxes on the form that would exempt the project from a building permit. *(Attachment 11-1 & 11-2 is a Kirkland blank form with the boxes checked on page 2 representing what Anderson did online, but is unavailable now)* The application was marked "unaccepted" on November 8, 2021. *(Attachment 12, top line)*

130.    Solx was emailed the following comments: "Reasons: Contact the reviewer directly for any questions about these comments DeJai Mitchell, Assistant Planner Dmitchell@kirklandwa.gov: elevations required per...(LINK TO CITY OF KIRKLAND WEBPAGE)." *(Attachment 12, first paragraph after header)*

131.    The Webpage does not cite a City Code. *(Attachment 1, Exhibit 2) )* It does, however refer to a "federal Department of Energy Grant" and other partners having "developed a streamlined process for the permitting of small-scale rooftop-mounted solar installations for single family residential customers." *(Attachment 13, page 1, 3rd paragraph from bottom)*

132.    This was the *first department demand* for Elevation Views for this project. *(Attachment 12, first paragraph after header)*

133.    Anderson followed up with phone calls and an email to DeJai Mitchell and Tom Jenson at the City of Kirkland Planning Department requesting a code citation to support the request for elevation sheet(s), but did not receive a department response. *(Attachment 1-11, First Paragraph)*

Civil Rights Complaint - 42 USC § 1983 - Page    20

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

134.    In the meanwhile, Solx Electrical Administrator (01) Stephen Anderson visited the City of Kirkland planning department on November 10, 2021 and spoke with building official Senior Plans Examiner Angela Haupt of the Planning and Building Department who accommodated an "intake" request and provided a "review."

135.    Anderson explained the project was exempt from a building permit per *KMC 21.06.215 "Work exempt from permit*," and that the solar panels would not exceed the height of the roof or 18" above the surface of the roof.

He noted that such information was clearly relayed per checked boxes in the solar electrical application and uploaded to the mybuildingpermit.com website per protocol. *(Attachment 11-1 & 11-2)*

136.    Angela insisted building permit related documentation such as elevation views could be made by the City of Kirkland building department as a condition of issuing an electrical permit, but provided no code reference.

137.    Angela Haupt offered a narrative that planners at various city departments worked together to pass laws so requirements exempt from building permits could be required during electrical review instead.

138.    Yet, the narrative was false.

139.    The grant resulted in a study recommending passage of laws intending to reduce paperwork for solar installers, and resulted in PV panels being exempt from permits in Bellevue and Kirkland *(Attachment 1-23, Paragraph 1)*

140.    Angela was strident and emphatic in her position.

141.    This was the *second department demand* for Elevation Views.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

142.    Anderson responded that he would see her in court.

143.    On November 16th, Anderson provided 3 letters of appeal to the City of Kirkland. *(Attachment 1)*

144.    He delivered 2 to the intake counter for the Planning and Building Department.

145.    One was for the Planning and Building Department generally and the other was for Angela Haupt.

146.    The counter clerk initially declined to stamp Anderson's copy, and left to consult with other department officials, but eventually returned and stamped it "Received Nov 16, 2021 City of Kirkland Planning & Building Department."

147.    Anderson then sought to deliver a copy to the City Clerk's office. However, that office was unattended.

148.    So, Anderson delivered it to the City of Kirkland information counter. *(This was eventually returned to Anderson by mail from Tom Jensen, it bears the Kirkland "Received" stamp)*

149.    The clerk there also hesitated to stamp Anderson's copy. She eventually came back with a man that had some affiliation with the City Clerk's office and he accepted it after the clerk stamped Anderson's copy. The clerk also accepted the $125.00 filing fee.

150.    On November 18, 2021, DeJai Mitchell wrote, "I apologize for being unable to find a solution in a timely manner. However, I talked to additional planners and they noted that if you could provide some type of depiction showing the elevation and dimensions of the solar panels off of the roof and showing that they won't go past the roof; that would suffice for the building height elevations requested?" *(Attachment 14)*

Civil Rights Complaint - 42 USC § 1983 - Page    22

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

151.    This was the *third department demand* for Elevation Views.

152.    On November 18, 2021, without explanation, the status of the application changed to "application received." Permit number ESF21-08939 was assigned to the application and Solx received an invoice for payment of the permit.

153.    In a letter dated 11/23/2021, Acting Building Official, Tom Jensen wrote, "The appeal submitted regarding intake of an electrical permit application ID 1044425 is being returned since there is no final decision that is appealable at this time pursuant to KMC 21.06.570." *(Attachment 3)*

154.    Jensen returned by mail the Solx/Anderson original copy of the appeal left for the Planning and Building office that included a notarized claim for damages form as its *exhibit 8a.* *(See Attachment 1-26 & 1-27)*

155.    However, KMC 21.06.570 does not require that only "final decisions" are appealable. It merely states that "decisions are appealable." *(Attachment 15)*

156.    Additionally, The City of Kirkland has a document available from its website that outlines the format for appeal. It explains that "decisions" are appealable.

157.    Adding the language "final" to the law was a new rule Jensen spontaneously created out of thin air.

158.    This is forbidden by the Separation of Powers doctrine found in the US Constitution.

159.    Jensen is a member of the executive branch of government, not the legislative branch.

160.    Moreover, Jensen may not pretend his decisions relayed by subordinates are not decisions of "The Building Official" and do not count for purposes of appeal.

Civil Rights Complaint - 42 USC § 1983 - Page     23

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

161.    KMC 21.06.155, 21.06.160, and 21.06.165 discusses "The Building Official" in terms that make it impossible for that position to do all referenced work him or herself and such duties are also effected by other persons as well.

162.    Senior Plans Examiner Angela Haupt was relaying the decision of "The Building Official" when she reiterated the demand for elevation views.

163.    As in the above referenced Rahimi project, the department "Building Official" has a long history of communicating demands for Elevation Views through subordinates despite applicants checking all the boxes indicating the projects exempt status for the PV panels.

164.    City of Kirkland official(s) violated Anderson's appeal and due process rights by interfering with the appeal.

165.    KMC 21.06.578 required Tom Jensen or another city official to prepare a notice of appeal and calendar it for the upcoming December 2nd Hearing.

166.    Anderson contacted Hearing Examiner Susan Drummond on 11/30/2021 to see if he could get on the calendar for the Hearing. *(Attachment 16)*

167.    She responded that she only filled in occasionally and was not scheduled for that Hearing. *(Attachment 16)*

168.    She suggested Phil Olbrechts as the likely Hearing Examiner.

169.    Anderson was unable to make contact with Olbrechts.

170.    On 11/30/2021, Susan Drummond also forwarded the email to City Attorney Stephanie Croll, who responded, "Thank you madam Hearing Examiner." *(Attachment 17, First Sentence)*

171.    On 12/1/2021, Anderson sent an email to Tom Jensen, Stephanie Croll, and Dawn Nelson explaining the problems related to denying the appeal and not providing a written

Civil Rights Complaint - 42 USC § 1983 - Page    24

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

retraction of the request for elevation views or inspection of exempt solar panels. *(Attachment 18)*

172.    On 12/1/2021, Stephanie Croll responded, "Please direct all further communications related to your concerns to me." *(Attachment 18)*

173.    Solx and Anderson were never added to the calendar for the hearing December 2nd, 2021.

174.    On 12/2/2021, Electrical Plans Examiner Lazlo Farkas contacted Solx in an email.

175.    He wrote, " I am currently working on a plan review for a Solar PV System for Chitsaz project in the City of Kirkland. Please resubmit your site plan drawing in black and white only, no color mark ups. Provide a detailed drawing of the required building heights and dimensions." *(Attachment 19)*

176.    This was the *fourth department demand* for Elevation Views.

177.    Although Farkas had accepted color drawings for the prior Canavor project, Anderson spent a couple hours reformatting the drawing in black and white and uploaded it to mybuildingpermit.com and emailed him a copy directly.

178.    Anderson responded to the request for "building heights and dimensions" by referring Farkas to Stephanie Croll. *(Attachment 20)*

179.    Anderson also uploaded a page entitled Elevation view to Mybuildingpermit.com explaining the project was exempt from elevation views under the drop down "elevations."

180.    On 12/3/2021, the harassment continued. Farkas emailed Solx writing, "Please provide a diagram or drawing verifying the building elevations and the elevations of the solar panels." *(Attachment 21)*

Civil Rights Complaint - 42 USC § 1983 - Page    25

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

181.    This was the *fifth department* demand for Elevation Views.

182.    On 12/3/2021, Anderson forwarded the email to Stephanie Croll.

183.    On 12/9/2021, the permit issued.

184.    However, the permit stated, "Pre-Con required before the placement of modules on the roof." *(Attachment 22, Pages 1-9)*

185.    Solx complained of this very thing on page 3 of his appeal under #5 in paragraph 2. *(Attachment 1, Page 3)*

186.    It stated, "Electrical Plans Examiner Lazlo Farkas…historically refused to recognize the exemption for photovoltaic panels…and held up projects by requiring PV panels remain on the ground until after an initial "Pre-Con inspection."

187.    The plans were also stamped with section of the incorrect version of the IFC which directed false walkpaths along valleys and hips. *(Attachment 22, Page 2, Lower Right)*

188.    Solx immediately requested an inspection for the following day.

189.    On 12/10/2021, City of Kirkland Electrical inspector Rene Van Loveren arrived at the Chitsaz job site.

190.    He was positive, affable, and thorough.

191.    He thumbed through the line diagram and approved electrical plans.

192.    He asked about grounding and bonding, which is typical and legitimate.

193.    Anderson had the materials on site and showed him a physical assembly of the flashings, standoffs, rails and other parts all attached together at ground level so he could understand how everything connected electrically. However, much of that was exempt from inspection.

Civil Rights Complaint - 42 USC § 1983 - Page    26

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

194.    Anderson also mentioned that he had objected to the department request for elevation views and specifically stated that the solar panels themselves were exempt from a permit and inspection.

195.    Anderson commented the City of Kirkland administrative staff didn't even know their own code, or knew it and refused to follow it.

196.    Anderson then paged through the copy of his appeal and read to him KMC 21.06.215 – PV Panels Exempt from Permit. *(Attachment 1, Exhibit 3a)*

197.    Van Loveren was friendly and polite and nodded like he understood.

198.    Then he walked through the homeowner gate in the side yard to the 30 solar panels tilted against the house in that discrete location.

199.    He asked Anderson to move the panels apart so he could check the model number and the listing mark.

200.    Anderson complied.

201.    Anderson also took a picture of Van Loveren performing the search. *(Attachment 23)*

202.    The search was unreasonable because it was prohibited by KMC 21.06.215 Work Exempt from Permit.

203.    The search was also unreasonable because it involved a trespass ab initio (Latin for trespass from the beginning).

204.    Van Loveren lost his implied license to be on Anderson's worksite/place of business when he trespassed through the homeowner gate to search prohibited exempt materials.

205.    The PV panels were outside the scope of the legitimate inspection.

206.    This was an invasion of Anderson's reasonable sense of privacy.

Civil Rights Complaint - 42 USC § 1983 - Page    27

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

1

2

**Facts Specific – City of Bellevue – Losi Project**

3

4

207.    On May 28, 2019, Solx applied for a solar electrical permit with the City of Bellevue

Building Department.

5

6

208.    The permit went through electrical plan review, was assigned # 19-115020 BG, and was

issued effective June 6, 2019.

7

8

209. Homeowner decided he wanted the main electric service panelboard upgraded.

9

210.    On June 26, Solx obtained a separate electrical permit for the electric panel swap.

10

Technically, since this new panel had a 225A busbar and a 200A main breaker, it was no longer

11

subject to electrical plan review. Anderson figured the inspector would recognize this at the

12

time of the inspection and not object to the minor change to the line diagram.

13

211.    Typically, Solx provides a mock up assembly of solar parts and materials used in the

14

project at ground level for the inspector to see.

15

212.    However, notes on Mybuildingpermit.com ask for a ladder and harness to be available

16

for an inspector doing a roof inspection.

17

213.    On June 28, 2019, the day of the initial inspection, Solx contacted inspector Tim

18

Dunnigan and asked if he wanted to see the components on the ground, or rather preferred to

19

have a ladder set up for roof access and a harness provided.

20

214.     Inspector Dunnigan said he preferred a ladder and a harness.

21

22

215.    Anderson set up a ladder and had a harness available.

23

216.    When Dunnigan arrived, he did not use the ladder.

24

217.    He told Anderson, "I'm not allowed to go on the roof."

25

Civil Rights Complaint - 42 USC § 1983 - Page    28

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

218.    He seemed quite disturbed.

219.    Dunnigan searched the photovoltaic panel(s) at ground level.

220.    In the inspection comments for the electric panel swap, he wrote, "solar panel witnessed ok do not need to have one on the ground for next inspection." *(Attachment 25)*

221.    However, the PV panels were exempt from an inspection per Bellevue City Code 23.05.090 (B)(3)(t).

222.    The search of the solar panels was an unreasonable search.

223.    It was also a trespass ab initio.

224.    It invaded Anderson reasonable sense of privacy on his worksite and invaded his work product.

225.    Dunnigan also searched the new electric panel under separate permit 19-116841 BF.

226.    Without any comment, Dunnigan went back to his car and sat there for a quite a while.

227.    Eventually, Anderson approached the vehicle and waved at Dunnigan so he could see him.

228.    Dunnigan unrolled the window slightly, handed Anderson a corrections notice, and drove off as Anderson was reading it.

229.    There were 5 comments listed 1-4.

230.    The same correction comments were published online under both the solar permit and the separate electric panel swap permit, except the electric panel permit included the comment about the "witnessed" solar panels.

231.    A couple of the correction comments were legitimate and fair. He was right to ask for tie bars on the multi-wire branch circuit(s). Also, the requirement for bonding and grounding to

Civil Rights Complaint - 42 USC § 1983 - Page    29

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

be updated when a like-for-like service panel swap occurs arguably finds basis in some codes even though enforcement varies from jurisdiction to jurisdiction.

232.  However, the comment about changes to the line diagram was petty and not appropriate since the 225A busbar with the 200A main breaker was no longer subject to plan review per the City of Bellevue solar application.

233.  Furthermore, the correction comments #1 was not legitimate. *(Attachment 25)*

235.  Comment #1 stating, "a precon is required and was missed. EC must have identical materials at ground level for inspection" had multiple problems.

236.  It was deceptive to tell Anderson to set up a ladder and harness for inspection, but then refuse to use them.

237.  Also, Solx did have identical materials at ground level.

238.  Dunnigan simply didn't ask to see them at ground level while on site.

239.  All materials Bellevue requested for a "pre-con" were on site.

240.  What Dunnigan was really objecting to was that Solx had started construction prior to a "pre-con."

241.  Solx even had solar panels at ground level for inspection even though they were exempt as a courtesy.

242.  That was not enough for Dunnigan. He also expected the "support structure" to not be constructed on the roof.

243.  However, since WAC 296-46B-690 (4) expressly states the "entity placing a...panel...is not subject to the requirements for electrical inspection...so long as the work is

Civil Rights Complaint - 42 USC § 1983 - Page    30

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

limited to the placement and securing of the device and an electrical permit has been previously

obtained," Dunnigan had false expectations.

244.   The permit had been "obtained" previously on June 6, 2019.

245.        Solx had every right to install the flashings and roof mounts under WAC 296-

46B-690 (2) before the permit was obtained and the rails and solar panels under WAC 296-

46B-690 (4) after the permit was obtained without waiting for a pre-con inspection of those

items.

246.   If Dunnigan had inspected the structural supports already mounted on the roof, it would

have been an unreasonable search.

247.   Dunnigan should not have searched them on the ground either, since they were exempt.

248.   Presumably, he could only search the electrical items that weren't part of the support

structure.

249.   The only item of the Iron ridge racking assembly falling into that category would have

been the Iron Ridge bonding bolts which accept grounding conductors from the microinverter

trunk cable(s) that "functionally" ground the system to the ground bar of the main service panel.

250.   He could have also inspected junction boxes and conductors.

251.   The solar panels and racking assembly flashings, standoffs, and rails were off limits.

However, the department went on the roof and inspected the racking system at the final

inspection anyway.

**Facts Specific - City of Bellevue  – Noell Project**

252.   Solx applied for a solar electrical permit from the City of Bellevue on March 9, 2020.

Civil Rights Complaint - 42 USC § 1983 - Page     31

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

253.    Solx had checked all the boxes on the permit application exempting it from a building permit.

254.    The project was subjected to plan review.

255.    On March 19, 2020, in retaliation for prior Anderson acts, Plans Examiner Steve Leighton issued 4 corrections. (Attachment 26)

256.    The corrections were all false.

257.    The Bellevue plan review process directs applicants to use the department provided schematic form.

258.    But the form was defective. *(Attachment 26, Page 4)*

259.    It did not provide a space for optimizers and the department did not have one available as of 3/19/2020.

260.    Anderson did the best he could with the form they had.

261.    He made type written notes about the optimizers in the space outside the lines and included optimizer spec sheets with the submission. *(Attachment 26, page 5, Upper Right)*

262.    Anderson wrote, "*NOTE: THIS SYSTEM HAS OPTIMIZERS MOUNTED UNDER EACH SOLAR MODULE THAT COMMUNICATE WITH THE INVERTER AND REGULATE VOLTAGE AND AMPERAGE. OPTIMIZER MAY RAMP AMPS UP TO 15A MAX AND VOLTAGE TO 450 VOLTS MAX ON EACH STRING."

263.    The optimizer spec sheets provided any other information Leighton could have wanted for optimizers.

Civil Rights Complaint - 42 USC § 1983 - Page    32

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

264. Leighton wrote, "3. Your PV diagram does not include the optimizers. Please clarify and adjust your plans accordingly. 4. The type and rating of optimizers to be used with this project are not identified. Please include this information with your plans."

265. But, it was impossible to provide this information on the provided form and adding a tiny square inside each of the solar modules on the illustration would have been extraneous and messy.

266. Leighton also asked for other non-sensical corrections in notes 1 & 2. See attached.

267. Because it was impossible to provide that information in the provided form, Leighton required Anderson to provide a custom line diagram schematic set.

268. If Leighton had merely asked Anderson to add little squares representing optimizers inside the solar panels on the illustration, that would have been one thing.

269. But, insisting Anderson redo the whole schematic as well was just mean.

268. It took Anderson a full day of work, but he provided the information and the project passed plan review on 3/24/2020.

269. Solx was replacing homeowner's main electrical service panel under a separate permit.

270. Anderson requested an inspection for both the panel swap and solar Pre-Con inspection for 3/27/2020.

271. The first Covid outbreak had recently emerged and the City of Bellevue had issued a notification discussing curtailments of inspections.

281. Anderson discovered the department was not treating "solar workers" as Essential.

282. However, the Governor's order Proclamation 20-25 clearly defined "workers needed for…solar" as Essential in the appendix on page 5. *(Attachment 27)*

Civil Rights Complaint - 42 USC § 1983 - Page    33

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

283.    Additionally, the March 31st Construction Guidance Memo was issued by the Governor defined Renewable Energy Workers as Essential. *(Attachment 28, Page 2)*

284.    Solar is a Renewable Energy.

285.    Solx wrote department heads and the Mayor objecting to their position on solar workers being non-essential.

286.    Solx knew Bellevue would not sign off on the Pre-Con inspection until the solar panels were inspected.

287.    Since an inspector would already be on site to inspect the main service panel, Solx sought and received permission from the Chief inspector to have the inspector also inspect the solar panels.

288.    Solx still regarded this as a trespass.

289.    Inspector John Grotte called Anderson the morning of 3/27/2020 and gave him a long lecture about solar workers being non-essential.

290.    Anderson chose not to engage him because Anderson had already objected to the Chief Inspector and other department heads.

291.    Because of Grotte's concern about getting infected with Covid, Anderson chose to leave Grotte alone for the inspection.

292.    The homeowner agreed to show Grotte the location of the main service panel that was just replaced, the solar panels, and the racking.

293.    Anderson had left a mock up of the materials on the ground next to the electric panel where they couldn't be missed if Grotte wanted to search them.

294.    Grotte inspected the main service panel and marked it as passed or "finaled."

Civil Rights Complaint - 42 USC § 1983 - Page    34

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

295.    He also entered the side yard and inspected the solar panels even though they were exempt from an inspection per Bellevue City Code 23.05.090 (B)(3)(t).

296.    His journey into the side yard was a trespass.

297.    He then informed the homeowner that he would not look at the racking assembly that was sitting next to the electric panel in the garage.

298.    Homeowner relayed this to Anderson in a text and over the phone.

299.    John Grotte updated a "partial" pass to the solar electrical inspection.

300.    His comments stated, "ETL label found on the panels. Mounting system is already mounted on the roof top and access was not provided." *(Attachment 24, Page 7)*

301.    However, the comment was in direct contrast to the comments from Dunnigan who refused to use the ladder and harness to search the mounting system and wrote, "a precon is required and was missed. EC must have identical materials at ground level for inspection."

302.    Both Dunnigan and Grotte had invented excuses to harass Anderson for installing the support structure prior to the Pre-Con inspection.

303.    Solx had every right to install the flashings and roof mounts under WAC 296-46B-690 (2) before the permit was obtained and the rails and solar panels under WAC 296-46B-690 (4) after the permit was obtained without waiting for a pre-con inspection.

304.    However, with the exception of 4 rails Anderson placed on the roof after the permit was obtained, Solx wasn't the party that installed the support structure.

305.    The homeowner had his roofing company install the support structure (but not rails) so the warrantee on the new roof would not be voided.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

304.   Since the permit had already been issued, Grotte's visual search of the roof from the ground was prohibited by law.

305.   It was an unreasonable search.

306.   Anderson had gone above and beyond the legal requirements by providing the solar panels for inspection and samples of the entire racking assembly at ground level.

307.   Grotte failed the inspection.

308.   The solar project was on hold.

309.   The department refused to do a reinspection because of their contention that solar workers were non-essential.

310.   Solx appealed to the Chief inspector Timothy Hingtgen, the head of inspections Doug Fox, and The Building Official Greg Schrader. *(Attachment 24)*

311.   They maintained their positions and refused to perform a reinspection. The Department even stated in writing they typically inspected flashings from the top of the ladder during inspections. The flashings are clearly exempt and not electrical in nature.

312.   Solx appealed to the hearing examiner.

313.   Anderson followed the instructions that appeared on the City of Bellevue website.

314.   They directed appellants to email their appeals to the city clerk email address.

315.   Schrader never responded in writing to Solx regarding the appeal to the Hearing Examiner.

316.   The appeal was never calendared for the Hearing Examiner.

317.   This was a violation of Anderson's Due Process Rights under the US Constitution.

318.   Eventually Anderson spoke with Schrader on the phone and/or via texts.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

319.    Schrader told Anderson his appeals were exhausted.

320.    Anderson told Schraeder he was making him miserable.

321.    Schrader relented and told Anderson he would order a reinspection.

322.    Anderson was concerned that Grotte would fail the inspection again.

323.    Anderson hired construction attorney Daniel Frohlich.

324.    Frolich met Anderson the morning of the reinspection April 22nd, 2020.

325.    Anderson had a ladder set up and a harness available.

326.    Grotte asked to see the Iron Ridge rails.

327.    Anderson retrieved a full package of 4 bundled 204" long rails from around the side of the house where they were stored.

328.    As Anderson turned to get the rails, Grotte asked Frohlich if he was the homeowner.

329.    Frohlich responded, "No."

330.    A sticker on the plastic wrapper said "Iron Ridge."

331.    Grotte looked all over the rails for a listing mark.

332.    However, at that time, the manufacturer Iron Ridge only provided a listing mark on 1 piece of the racking assembly, which was the grounding lugs. There was no listing mark on the rails.

333.    The applicable construction code only required 1 piece of the racking assembly to bear the listing mark, which is why he couldn't find it.

334.    Naturally, the lug was the single electrical component of the racking that bore the mark since the others were exempt from inspection anyway and not electrical components.

335.    Grotte started back toward his vehicle heading away from Anderson and Frohlich.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

336.   He turned his head and said he was going to fail the inspection.

337.   Anderson and Frohlich said in unison, "What did you say?"

338.   At that point, Grotte said he would pass the inspection.

339.   Then he drove off.

340.   Solx completed the installation and the project eventually passed a final inspection.

341.   But, Solx had experienced significant delays to the project which damaged Solx financially, and impacted its ability to compensate Anderson at the full amount.

342.   It was difficult on company morale.

343.   Solx had to assign its full time journeyman electrician to various non-solar projects which were outside the scope of Solx original arrangement with the journeyman electrician.

344.   Eventually, Solx lost the worker as an employee.

345.   This damaged Solx financially as well.

346.   It affected the company stock value, which was an asset of Anderson.

## FIRST CAUSE OF ACTION

Right to Be Secure From Unreasonable Searches

42 U.S.C. §1983 - Fourth Amendment;

347.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

348.   Historically courts have looked at the fourth amendment in two ways.

349.   Courts have recognized appellants right to be free from an invasion of their reasonable sense of privacy by government actors.

350.   Camara vs Municipal Court P. 387 U.S. 528 states, *"The basic purpose of the Fourth Amendment, which is enforceable against the States through the Fourteenth, through its*

Civil Rights Complaint - 42 USC § 1983 - Page   38

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

*prohibition of "unreasonable" searches and seizures, is to safeguard the privacy and security*

*of individuals against arbitrary invasions by governmental officials.*

351. Kirkland Municipal Code 21.06.160 also recognizes the requirement for "reasonable cause" to justify a "right of entry." Nowhere did Defendants have a right to enter and search exempt solar panels or other equipment.

352.    Courts have also recognized appellants rights to be free from *trespass* by government actors.

353.    In this case Defendants, through actions and decisions of their employees, both trespassed and invaded Plaintiffs reasonable sense of privacy.

354.    Plaintiffs had a license to operate their business on their customers property and maintain a job site.

355.    When Defendants inspected the materials (solar panels and sometimes rails and flashings) that were exempt by respective city codes, they committed a trespass on the real property and exceeded the scope of their license to be there.

356.    This was a trespass ab initio.

357.    Thus the search(es) were unreasonable.

358.    Moreover, even if a trespass were not to have occurred, Defendants invaded Plaintiff's reasonable sense of privacy by searching solar panels exempt by their own city code.

359.    Defendant also conducted searches of the support structure specifically exempted by WAC 296-46B-690 (2) and (4) that were abridged.

360.    Defendant Bellevue Inspector Tim Dunnigan searched the solar panels on 7/28/2019.

361.    Defendant Bellevue Inspector John Grotte inspected solar panels on 3/27/2020.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

362.    Defendant Kirkland Inspector McGivern inspected solar panels on 12/27/2018.

363.    Defendant Kirkland Inspector Van Louveren inspected solar panels for a model number on 12/10/2021.

364.    Defendant Bellevue Inspector John Grotte performed a visual inspection of the roof from the ground on March 27, 2020 and used that information to improperly fail the pre-con inspection.

365.    Defendants inspectors used their authority as construction police acting under color of law to effect the arbitrary and capricious decisions of the respective Building Officials when the laws provided the solar panels and structural support materials were exempt from searches.

366.    42 USC §1983 requires a violation the U.S. Constitution and an abridgement of a state law to trigger a cause of action. The Fourth Amendment violation of Plaintiff's right to be secure from Unreasonable Searches meets the Constitutional requirement and the respective abridgements of KMC 21.06.215 and BCC 23.05.090 constitutes the state law element.

## SECOND CAUSE OF ACTION

### Right to Be Secure From Unreasonable Seizures

### 42 U.S.C. §1983 - Fourth Amendment;

367.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

368.    Plaintiffs have the right to be secure from unreasonable seizures under the 4th Amendment of the U.S. Constitution.

369.    Defendants used information gleaned from unreasonable searches to place a hold on plaintiff construction materials and seize them in place.

Civil Rights Complaint - 42 USC § 1983 - Page    40

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

370.   This occurred when John Grotte visually searched the roof at the Noell residence and discovered roof mounts were already placed on the roof.

371.   His unreasonable search of lawfully placed roof mounts and support materials led to an unlawful seizure of the solar panels and rails and held them at ground level.

372.   Grotte refused to pass the pre-con inspection based on rules the "building official" arbitrarily and capriciously created demanding that support structure materials remain at ground level.

373.   Defendant Inspector Dunnigan did a similar thing when he visually searched the roof at the Losi project, found materials already in place, then stated the materials were not at ground level.

374.   Comments demanding solar panels remain on ground until after a "pre-con" by Plans Examiner Steve Leighton at the City of Bellevue, Plans Examiner Lazlo Farkas at the City of Kirkland and others led to holds on Solx materials at work sites that seized the property in place and unlawfully halted progress on projects.

375.   Five demands for record searches involving Elevation Views and related decisions relayed by Angela Haupt at the City of Kirkland, DeJai Mitchell, and Lazlo Farkas resulted in seizures of Solx property on the Chitsaz worksite and halted construction. Similar demands by City of Kirkland staff for elevation views resulted in seizures of Solx property on the Kambiz Rahimi worksite as they were held in place and work halted.

376.   42 USC §1983 requires a violation the U.S. Constitution and an abridgement of a state law to trigger a cause of action. The Fourth Amendment violation of Plaintiff's right to be secure

Civil Rights Complaint - 42 USC § 1983 - Page   41

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

from Unreasonable Searches meets the Constitutional requirement and the respective abridgements of KMC 21.06.215 and BCC 23.05.090 constitutes the state law element.

## THIRD CAUSE OF ACTION

### Right to Due Process of Law

### 42 U.S.C. §1983 – 4th and/or 14th Amendment;

377.    Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

378.    The US Constitution guarantees Plaintiffs a right to Due process of law.

379.    Plaintiff's demanded an appeal to the Hearing Examiner at the City of Kirkland.

380.    Defendants refusal to accommodate the request was a violation of Due process of Law.

381.    It was quite egregious.

382.    The act of ignoring the appeal suggests the Building Official knew Plaintiff was in the right and Defendant risked losing the appeal.

383.    The City of Bellevue Building Official Greg Schrader also ignored the Anderson respective appeal to the Hearing Examiner.

384.    Presumably he also knew Anderson was right and decided the risk that Anderson would file in court was lower than the risk the Department would win with the Hearing Examiner.

385.    42 USC §1983 requires a violation the U.S. Constitution and an abridgement of a state law to trigger a cause of action. The Fourteenth Amendment violation of Plaintiff's right to Due Process meets the Constitutional requirement and the respective abridgements of KMC 21.06.570 and BCC 20.35.085 constitutes the state law element.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

386.    Plaintiff properly appealed to the hearing examiner for City of Kirkland. Solx paid the $125.00 fee, timely filed with the building and planning department, included notarized copies, and met all the other procedural requirements.

387.    There was no valid reason for the Building Official to return the appeal letter to Anderson and Solx.

388.    Similarly, there was no valid reason for the Building Official at the City of Bellevue to ignore Plaintiff's appeal and inform him that his appeal rights were exhausted.

## FOURTH CAUSE OF ACTION

### Separation of Powers

### 42 U.S.C. §1983 – 4th and/or 14th Amendment;

389.    Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

390.    Articles 1-3 of the US Constitution provide a separation of powers between branches of government.

391.    It is a concept US Citizens are taught and an early age and most citizens understand the concept.

392.    Everyone knows members of the Executive Branch and Judicial Branches can't spontaneously create their own laws. This duty remains with elected officials of the legislative branch (not elected judges or building officials).

393.    Yet, we have seen in the facts set before that Building Officials have imposed their own notions of what the laws should be rather than those passed by legislatures.

394.    Building Official Tom Jensen of Kirkland added the term "final" to the respective law related to appeals.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

395.    Building Official(s) at the City of Bellevue refused to treat Plaintiffs as "Essential" during the Covid shutdown.

396.    Building Official(s) at the City of Kirkland decided to impose "elevation view" documentation on Solx.

397.    Building Official(s) at the City of Kirkland decided to impose the wrong version of the International Fire Code and  imposed 36" wide setbacks at the eaves and non-conforming setbacks at valleys and hips.

398.    Building Official(s) at both cities instituted a program where solar panels were inspected despite them being exempt.

399.    Building Official(s) at the City of Bellevue refused stopped inspections after visually searching the roof and noticing flashings and support structure materials on the roof despite those being exempt from inspection.

400.    Building Official(s) at both cities harassed Plaintiff incessantly with demands for things that weren't things using excuses and claims of authority that did not exist.

401.    Building Official(s) used this authority to pressure Plaintiff to create information that didn't exist, search records that did exist, perform work that was not legally required, halt work, and unreasonably wait.

402.    This behavior cannot be allowed in a democratic society. If it continues, an administrative police state will emerge, if it has not already, and grow.

**Injunctive Relief**

403.    Plaintiff realleges and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

Civil Rights Complaint - 42 USC § 1983 - Page    44

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

404.    A real and immediate difference exists between Plaintiff and Defendants regarding Plaintiff's rights and Defendants' duty owed to Plaintiffs to conduct inspections that conform to the law.

405.    Defendants' policies and actions have resulted and will result in continuing irreparable injury to Plaintiff.

406.    Plaintiff experiences damage to reputation when projects are routinely delayed with no legal basis. Reputation is considered an irreparable injury. It is the sort of thing that juries are unlikely to compensate financially in a civil case even upon victory.

407.    Additionally, Plaintiff needs to conduct rooftop work without the distraction of harassment. Plaintiff needs a clear head to avoid a fall or injury.

408.    There is no plain, adequate or complete remedy at law to address the wrongs described herein.

409.    Defendants have made clear by their repeated search of exempt PV panels, other exempt materials, demands for documentation of non-electrical solar related building methods, search of passive equipment, treatment of solar workers as non-essential, and other requests that spontaneously appear from no law, that they will harass Plaintiff indefinitely.

410.    Defendants have also shown an unwillingness to recognize Plaintiff's appeal rights.

411.    Unless restrained by this Court, Defendants will continue to implement these unlawful policies and practices as they ignore existing laws and arbitrarily and capriciously create new ones.

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

412.   Defendants' acts alleged above violate established constitutional rights of Plaintiff and Defendants could not reasonably have thought that the conduct of their agents and employees in searching and seizing Plaintiff's work product and worksite(s) was lawful.

413.   An actual controversy exists between Plaintiff and Defendants in that Defendants, their agents and employees, have engaged in the unlawful and unconstitutional acts alleged herein and intend to continue to do so. Plaintiff claims that these acts are contrary to law and seek a declaration of their rights with regard to this controversy.

414.   Plaintiff seeks an injunction against further abuses.

415.   As a direct and proximate consequence of the acts of Defendants' agents and employees, Plaintiff has suffered and will continue to suffer damages through injury to finances, status, health, and reputation. Defendants actions also pose an immediate risk to physical injury of Plaintiff Anderson through ongoing distraction.

416.   Plaintiff has filed administrative claims with the Defendant(s).

WHEREFORE, Plaintiffs pray as follows:

1.  For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in policies, practices and conduct complained herein;

2.  For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiff's rights under the United States constitution and the laws of Washington State;

Civil Rights Complaint - 42 USC § 1983 - Page    46

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

3. For an order restraining Defendants from inspecting or requiring permits for work product including solar roof mounts and the solar support structure during phase 1 of solar construction (Per WAC 51-54A-1204.2.1 and WAC 296-46B-690(2))

4. For an order restraining Defendants from searching PV Panels, roof mounts, and/or solar support structure during phase 2 of construction (i.e. once electrical permit is obtained) so long as the applicable exemption boxes are checked on the related solar application.

5. For an order restraining Defendants from making permit issuance at any time contingent on elevation views, engineering, illustrations showing roof mount spacings, or other elements referred to in the respective municipal code referencing "Work Exempt from Permit."

6. An order restraining Building Officials from requiring solar panels and supporting rails to remain at ground level until after a "pre-con," and clarifying they can immediately be placed on the roof once an electrical permit is issued.

7. An order stating that inspections will only relate to the non-passive electrical portion of the solar install. Thus, plug and play devices such as optimizers and microinverters will not be subject to inspection except to provide spec sheets to support energy supply calculations. This means they need not remain at ground level for a "pre-con," but can be installed simultaneously with the solar panels.

8. If inspectors perform a search of the roof, it will be limited to inspection of the electrical aspects of the installation such as conduit, junction boxes, conductors, grounding and bonding, and not include solar panels or the support system for the panels per WAC 296-46B-690(4). This means the rails can be installed simultaneously with the solar

Civil Rights Complaint - 42 USC § 1983 - Page   47

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

panels and the rails are not subject to inspection since they are part of "placement and securing...the device."

9. An order restraining Defendants from requiring walkpaths on residential roofs greater than 18" along each side of the horizontal ridge when the criterium described in Exception 5 of WAC 51-54A-1204.2.1 is met.

10. An order explaining that if plans examiners nevertheless make notes on issued permits asking for walk paths greater than this, in such cases, installers may simply ignore the comments and conform to the 18" guideline, but that solar applicants should note the 18" pathways and 33% roof ratio calculation in an illustration provided for plan review in advance so plans examiners know applicants are invoking Exception 5, which supplements KCC 21.06.215(1)(V) and/or BCC 23.05.090.

11. For damages in an amount to be determined according to proof or $295,000.00 whichever is more appropriate.

12. For costs of suit and attorney fees as provided by law

13. For such other relief as the Court deems just and proper.

Respectfully submitted this 27th day of December, 2021

_Stephen Anderson_
_____
Stephen Anderson

Civil Rights Complaint - 42 USC § 1983 - Page    48

Stephen Anderson
218 Vista Del Mar St
Camano Island, WA 98282
(425) 765-2511
stephen_m_anderson@msn.com

Jordan Anderson
314 Vista Del Mare St
Camano Island, WA
98282

U.S. District Court
Western District of Washington
Clerk of the Court
700 ? Stewart
Seattle, WA

FILED (DROP BOX)

DEC 27 2021

AT SEATTLE COURT
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Dropped
in drop box
12/27/2021